1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

FAWNETTE S.,

Plaintiff,

Case No. 3:18-cv-05801-TLF

11

v.

12

COMMISSIONER OF SOCIAL
SECURITY,

13

Defendant.

ORDER REVERSING
DEFENDANT'S DECISION TO
DENY BENEFITS AND
REMANDING FOR FURTHER
PROCEEDINGS

14

15      Fawnette S. has brought this matter for judicial review of defendant's denial of her

16  application for supplemental security income (SSI). The parties have consented to have this

17  matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil

18  Procedure 73; Local Rule MJR 13. For the reasons below, the undersigned reverses defendant's

19  decision to deny benefits and remands for further administrative proceedings.

20                          I.      ISSUES FOR REVEW

21      1.  Did the ALJ err in determining that plaintiff's digestive disorder, cervical
            radiculopathy, and hand condition did not meet the criteria for listed
22          impairments?

23      2.  Did the ALJ give adequate reasons to reject opinions from an examining
            physician and a treating nurse practitioner?

24

25  ORDER REVERSING DEFENDANT'S DECISION TO
    DENY BENEFITS AND REMANDING FOR FURTHER
    PROCEEDINGS - 1

3. Did the ALJ give adequate reasons to discount plaintiff's testimony?

4. Should the Court remand for an award of benefits?

## II.     PROCEDURAL BACKGROUND

Plaintiff applied for SSI on December 9, 2015, alleging she became disabled beginning in July 2015. Dkt. 8, Administrative Record (AR) 10. Her application was denied at the initial and reconsideration levels of administrative review. *Id.* After a hearing, an administrative law judge (ALJ) issued an unfavorable written decision on November 1, 2017. AR 10-25; *see* AR 30-69 (hearing transcript). The ALJ performed the five-step sequential analysis. AR 10-25. She determined that there were jobs existing in significant numbers in the national economy that plaintiff could perform and therefore that plaintiff was not disabled. AR 23-24. Plaintiff filed a complaint with this Court, seeking reversal and remand for an award of benefits.

## III.     STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla," though "less than a preponderance" of the evidence. *Id.*; *Trevizo v. Berryhill*, 871 F.3d 664, 674-75 (9th Cir. 2017).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the

ORDER REVERSING DEFENDANT'S DECISION TO
DEN BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 2

1    decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* The Court considers only

2    the reasons the ALJ identified. *Id.*

3        "If the evidence admits of more than one rational interpretation," the Court must uphold

4    the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "'[w]here there

5    is conflicting evidence sufficient to support either outcome,'" the Court "'must affirm the

6    decision actually made.'" *Id.* (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

7                                    IV.    DISCUSSION

8        The Commissioner uses a five-step sequential evaluation process to determine whether a

9    claimant is disabled. 20 C.F.R. § 416.920. The Commissioner assesses a claimant's residual

10   functional capacity (RFC) to determine—at step four—whether the claimant can perform past

11   relevant work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). If the claimant cannot,

12   then the ALJ reviews—at step five—whether the claimant can adjust to other work. *Id.* The

13   Commissioner has the burden of proof at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th

14   Cir. 1999). The Commissioner can meet this burden by showing that a significant number of jobs

15   that the claimant can perform exist in the national economy. *Id.*; 20 C.F.R. § 416.920(e).

16   A.    Step-Three Listing Determinations

17       Plaintiff contends the ALJ erred at step three of the sequential evaluation process. She

18   challenges the ALJ's findings that plaintiff does not have an impairment or combination of

19   impairments that meets or medically equals Listings 1.00(B)(2), 1.04(A), or 5.08. *See* AR 13-15;

20   20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.00(B)(2), 1.04(A), 5.08.

21       At step three, the ALJ must evaluate the claimant's impairments to decide whether they

22   meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P,

23   Appendix 1. 20 C.F.R § 416.920(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If

24

25

1    they do, the claimant is deemed disabled. 20 C.F.R § 416.920(d). The burden of proof is on the

2    claimant to establish he or she meets or equals any of the impairments in the listings. *Tackett*,

3    180 F.3d at 1098. "A generalized assertion of functional problems is not enough to establish

4    disability at step three." *Id.* at 1100 (citing 20 C.F.R. § 404.1526). An ALJ "must evaluate the

5    relevant evidence before concluding that a claimant's impairments do not meet or equal a listed

6    impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

7         To meet a listing, a claimant "must have a medically determinable impairment(s) that

8    satisfies all of the criteria of the listing." 20 C.F.R. § 416.925(d). To medically equal a listed

9    impairment, "the medical findings (defined as a set of symptoms, signs, and laboratory

10   findings)" must be "at least equivalent in severity to the set of medical findings for the listed

11   impairment." SSR 83–19, 1983 WL 31248 *2.

12        1.    Listing 5.08, Weight loss due to colitis

13        Plaintiff first contends that the ALJ erred in finding her colitis to be "non-severe" at step

14   two. After finding colitis is non-severe because "[t]here is no evidence of any work-related

15   limitations from" it, the ALJ did not assess whether plaintiff's colitis met or equaled Listing

16   5.08.

17        Although plaintiff presents this as a challenge to the ALJ's step-two finding that colitis

18   was not a severe impairment, such an error is harmless if it does not change the ultimate

19   disability determination. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (holding that

20   because ALJ decided step two in claimant's favor and was required to consider all impairments

21   in RFC, whether "severe" or not, "[a]ny alleged error is therefore harmless and cannot be the

22   basis for a remand"). Because plaintiff alleges that the harm occurred when—at step three—the

23   ALJ declined to consider plaintiff's weight loss under Listing 5.08, plaintiff's challenge is more

24   properly addressed as a step-three issue.

25   ORDER REVERSING DEFENDANT'S DECISION TO
     DENY BENEFITS AND REMANDING FOR FURTHER
     PROCEEDINGS - 4

Listing 5.08 requires that a claimant have "[w]eight loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 5.08.

Plaintiff has not shown harmful error due to the ALJ's step two finding because she does not present evidence that would show she meets or equals Listing 5.08. As plaintiff notes, the record shows that plaintiff consistently had a BMI of less than 17.50, including on evaluations at least 60 days apart in a consecutive six-month period, *see, e.g.*, AR 360, 383, 666. But plaintiff does not identify evidence that her low BMI was "due to" her digestive disorder. Although she points to her testimony that, at the time of the hearing, she was losing weight due to an infection in her abdomen, that infection had occurred less than a month before the hearing. AR 45-46, 49; *see also* AR 690-91 (diagnosis of colitis based on July 2017 CT scan). As the Commissioner points out, other notes in the record indicate that plaintiff's weight loss was monitored before and during the relevant period as potentially related to a thyroid condition rather than a digestive disorder. AR 450, 534, 652. Accordingly, plaintiff has not shown error with respect to the ALJ's failure to find colitis a severe impairment or compare it to a listing at step three.

Plaintiff also challenges the ALJ's determination that she did not meet or medically equal two other listings, due to her neck and hand conditions.[1]

---

[1] Plaintiff first asserts that the ALJ erred in failing to provide specific reasoning at step three. An ALJ can err at step three by making only a boilerplate finding that the claimant's impairments did not meet or equal a listed impairment. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

Here, the ALJ's analysis was sufficient. The ALJ made findings, in analyzing Listing 1.02(B), that the evidence regarding carpal-tunnel syndrome and plaintiff's right-shoulder disorder did not show "inability to perform gross and fine movements effectively." AR 13. The ALJ further found that plaintiff's spine disorders did not meet the criteria under Listing 1.04. As discussed below, substantial evidence supported these findings.

1

2.      Listing 1.02(B), Loss of functioning in upper extremities

2

To satisfy Listing 1.02(B), a claimant must show

3

Major dysfunction of a joint(s) (due to any cause): Characterized by gross
anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis,

4

instability) and chronic joint pain and stiffness with signs of limitation of motion
or other abnormal motion of the affected joint(s), and findings on appropriate

5

medically acceptable imaging of joint space narrowing, bony destruction, or
ankylosis of the affected joint(s). With: . . . Involvement of one major peripheral

6

joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in
inability to perform fine and gross movements effectively, as defined in 1.00B2c.

7

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.02(B).

8

The regulations define "[i]nability to perform fine and gross movements effectively" as

9

"extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very

10

seriously with the individual's ability to independently initiate, sustain, or complete activities."

11

*Id.*, § 1.00(B)(2)(c). They provide, as examples of inability perform fine and gross movements

12

effectively, "the inability to prepare a simple meal and feed oneself, the inability to take care of

13

personal hygiene, the inability to sort and handle papers or files, and the inability to place files in

14

a file cabinet at or above waist level." *Id.*

15

The ALJ found that neither plaintiff's carpal tunnel syndrome nor her right-shoulder

16

disorder met or medically equaled the severity of Listing 1.02(B) because "there is no evidence

17

of inability to perform gross and fine movements effectively." AR 13.

18

Substantial evidence supports this finding. The only medical evidence plaintiff points to

19

as satisfying these criteria is the vague statement of her treating provider, Deana Dahl, family

20

nurse practitioner (FNP), that plaintiff "has very limited ability to use upper extremities." AR

21

562. Plaintiff points also to her own testimony that she can only use her hands for brief periods

22

of time. *See* AR 55-56, 58-59, 61-62, 248-50. Plaintiff's subjective testimony cannot substitute

23

for medical evidence in making a medical equivalence determination at step three. *See Lewis v.*

24

25

*Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (citing C.F.R. § 404.1529(d)(3)). Further, treatment

notes and Dr. Leinenbach's physical evaluation showed a normal ability to grip, grasp, and hold.

AR 438, 749. The ALJ could reasonably interpret the evidence as not showing "extreme loss of

function" in plaintiff's arms and hands. AR 13; *see* 20 C.F.R. Part 404, Subpart P, Appendix 1, §

1.00(B)(2)(c).

In addition, plaintiff does not attempt to show that her conditions amount to "gross

anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and

chronic joint pain and stiffness." *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.02(B). Nor

does she point to "findings on appropriate medically acceptable imaging of joint space

narrowing, bony destruction, or ankylosis of the affected joint(s)." *See id.*

Plaintiff thus has not shown any error in the ALJ's finding that her shoulder, wrist, and

hand conditions do not meet or medically equal Listing 1.02(B).

3. Listing 1.04(A), Nerve root compression

Listing 1.04 comprises "[d]isorders of the spine . . . resulting in compromise of a nerve

root (including the cauda equina) or the spinal cord." 20 C.F.R. Part 404, Subpart P, Appendix 1,

§ 1.04. The listing requires, in addition, evidence of either (A) nerve root compression, (B) spinal

arachnoiditis, or (C) lumbar spinal stenosis resulting in pseudoclaudication, as the regulations

define those conditions. *Id.*

Plaintiff challenges the ALJ's finding that she did not satisfy Listing 1.04(A), which

requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of

pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or

muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the

lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Part 404, Subpart P,

Appendix 1, § 1.04(A); *see* AR 14.

The ALJ explained only that plaintiff "does not have nerve root compression with the other cited findings in subsection (A)." AR 14.

Substantial evidence does not support this finding. As plaintiff notes, the record contains support for each of the required findings in Listing 1.04(A): neuro-anatomic distribution of pain, *see* AR 806; limited motion of the spine, *see* AR 370, 394, 472, 672 687; and motor loss (atrophy with associated muscle weakness *or* muscle weakness), accompanied by sensory or reflex loss, AR 347, 360, 373, 406, 664.

While the ALJ is responsible for resolving conflicts and ambiguities in the evidence, *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014), neither the ALJ's decision nor the Commissioner's response brief identify any evidence that is inconsistent with the evidence plaintiff cites. The Commissioner cites several findings regarding plaintiff's balance and ability to walk and asserts that plaintiff received conservative treatment. Dkt. 12, p. 8. As discussed below, the conservative-treatment finding is not supported. And it is unclear how plaintiff's ability to balance and walk at an examination is inconsistent with neuro-anatomic distribution of pain, limitation of motion of the spine, or motor loss. The ALJ apparently disregarded the numerous treatment notes supporting each of these criteria. Finally, although plaintiff raised Listing 1.04(A) as her primary argument that she is entitled to disability, AR 36, the ALJ did not seek medical-expert testimony. *See Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (affirming where medical expert found that claimant's condition did not satisfy one criterion under Listing 1.03).

Accordingly, the ALJ lacked substantial evidence for her finding that plaintiff did not meet Listing 1.04(A). The ALJ erred at step three.

B.     Plaintiff's Testimony

Plaintiff challenges the ALJ's decision to discount her testimony about the nature and severity of her symptoms. Plaintiff testified that she has numbness in her hands that lasts 20 to 60 minutes. AR 41-42, 55-62. She also testified about limitations from pain in her back, neck, and right shoulder impairments. AR 43-44, 52-54, 56-62.

In weighing a plaintiff's testimony, an ALJ must use a two-step process. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). If the first step is satisfied and there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.*

Here, the ALJ reviewed the medical record with respect to each of plaintiff's impairments and concluded that plaintiff was not as limited as she testified. AR 16-20. In the RFC, the ALJ found that plaintiff can perform light work, only occasionally stoop, kneel, crouch, or climb ramps and stairs, and only occasionally reach overhead, but that she can reach frequently in other directions and handle and finger frequently. AR 15.

The ALJ failed to give clear, convincing, and supported reasons for discounting plaintiff's testimony about her back, neck, and shoulder conditions.

First, the ALJ found, generally, that plaintiff's "daily activities are inconsistent with her allegations of debilitating symptoms." AR 16. She noted that plaintiff performed some household chores, cared for her pets, and spent time with her aunt, and that she smokes 10 cigarettes per day. *Id.* The ALJ noted that at one point, plaintiff reported bundling wood, and at another that

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 9

1    she gardened and "infrequently" rode horses. *Id.*; *see* AR 432, 532. She also reported caring for

2    her five-year-old granddaughter in 2016. AR 444.

3          Plaintiff's activities do not provide a clear and convincing reason to reject her testimony.

4    The ALJ relied on plaintiff's activities to reject her claim of disability in general, but she did not

5    identify how specific activities undermine specific testimony. Most of the activities the ALJ

6    noted are not the type that can be readily transferred to a work setting. *See Diedrich v. Berryhill*,

7    874 F.3d 634, 643 (9th Cir. 2017) ("House chores, cooking simple meals, self-grooming, paying

8    bills, writing checks, and caring for a cat in one's own home, as well as occasional shopping

9    outside the home, are not similar to typical work responsibilities.").

10          The record does not demonstrate that plaintiff has engaged in these activities either at a

11    frequency or to an extent that would indicate that she can "spend a substantial part of . . . her day

12    performing" them. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). And although

13    bundling wood, gardening, and riding horses could conceivably be inconsistent with parts of

14    plaintiff's testimony, the ALJ did not make such connections, and the record does not contain

15    evidence about how frequently plaintiff engages in these activities or what physical functions

16    they require as plaintiff performs them. *See Trevizo*, 871 F.3d at 682.

17          Second, with respect to plaintiff's right shoulder, the ALJ found that objective findings

18    did not support the degree of limitation plaintiff alleged. AR 17. Inconsistency with objective

19    evidence can satisfy the clear and convincing requirement. *Regennitter v. Commissioner of*

20    *Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But an ALJ may not reject a claimant's

21    subjective symptom testimony "*solely* because the degree of pain alleged is not supported by

22    objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal

23

24

25

quotation marks omitted and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

The ALJ lacked support for her finding that the objective evidence undermines plaintiff's testimony about her shoulder condition. While the ALJ cited an "unremarkable" x-ray and imaging that showed plaintiff's humerus was not fractured, it is unclear how these undermine plaintiff's claims of shoulder pain and resulting limitations, which the record suggests are due to rotator cuff syndrome or tendonitis. AR 438, 650, 665; *see Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (ALJ may not "cherry-pick[ ]" items from treatment record without considering them in context of "diagnoses and observations of impairment"). The only other finding the ALJ cited was full muscle strength in a 2016 examination, AR 438. Yet the same examination showed limited range of motion in abduction, adduction, extension, and flexion; "focal tenderness along the anterior aspect"; positive impingement tests; and positive right arc test. AR 438. The rest of the record is replete with objective findings showing tenderness and a limited, painful range of motion in plaintiff's right shoulder. *See* AR 648, 659, 664, 674.

Third, the ALJ found, separately, that plaintiff received conservative treatment for her shoulder and back impairments. AR 17-18. She found that plaintiff's shoulder condition was treated conservatively with medication and home exercises. AR 17. She likewise found that plaintiff's cervical spine condition received conservative treatment, including home stretching exercises. AR 18-19.

Medical treatment notes do not support the ALJ's findings; the record shows that plaintiff's treatment for these impairments overlapped and was not conservative. Regarding plaintiff's shoulder treatment, the ALJ cited a single note indicating that plaintiff was prescribed "alternating heat, Ibuprofen, and gentle range of motion exercises." AR 17; *see* AR 653. Yet at

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 11

1  the same visit—and throughout the relevant period—plaintiff was continued on Norco

2  (hydrocodone-acetaminophen), an opioid medication. AR 653. Likewise, in finding that

3  plaintiff's cervical spine condition received conservative treatment, the ALJ cited a single

4  treatment note recommending home stretching exercises. AR 18-19; *see* AR 669. At that visit,

5  plaintiff was again continued on Norco, as treatment for "[c]hronic pain syndrome." AR 669.

6      Plaintiff was prescribed Norco consistently during the relevant period. At some visits,

7  plaintiff's providers indicated it was to treat her shoulder pain, her back condition, or both, AR

8  640, 654, 658, 660, 679; but at many other visits, it was prescribed to treat "chronic pain

9  syndrome," AR 673, 676, 684, 686. Plaintiff was prescribed another opioid, Percocet

10 (oxycodone-acetaminophen) for her neck condition. AR 680.

11      An ALJ may rely on conservative treatment in discounting a claimant's symptom

12 testimony. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (holding that over-the-

13 counter pain medication is "conservative treatment"). But a powerful pain killer, such as,

14 "consistent use of Norco, a strong opioid medication, cannot accurately be described as

15 'conservative' treatment." *Bucknell v. Berryhill*, No. ED CV 18-0261 AS, 2018 WL 6198459, at

16 *4 (C.D. Cal. Nov. 27, 2018) (unpublished) (collecting cases).

17      Accordingly, the ALJ did not offer clear and convincing reasons, supported by substantial

18 evidence, to reject plaintiff's testimony about symptoms and limitations from her shoulder, neck,

19 and back conditions.

20      In contrast, the ALJ offered sufficient reasons to discount plaintiff's testimony about her

21 hand pain and carpal tunnel syndrome. The ALJ found that Dr. Leinenbach's exam findings on

22 plaintiff's wrists and hands were inconsistent with plaintiff's allegations of limitations from

23 carpal tunnel syndrome. AR 16-17; *see* AR 438. This finding is supported: Dr. Leinenbach made

24

25

findings of intact gross and fine motor skills, motor strength, bulk, and tone, and sensation. AR

438. While he found positive Phalen's signs and Tinel's signs in both wrists, he opined that

plaintiff would have no limitations in handling, fingering, and feeling. AR 438-39. Dr.

Leinenbach's objective findings and opinion regarding the limitations plaintiff's hand and wrist

impairments would cause provided clear and convincing reasons to discount plaintiff's testimony

about those impairments. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

C.     Medical Opinion Evidence

Plaintiff next challenges the ALJ's decision, in assessing plaintiff's RFC, to discount

opinions from her treating provider, Deana Dahl, FNP, and an examining physician, Derek

Leinenbach, M.D. The ALJ failed to give specific, legitimate, and supported reasons to reject Dr.

Leinenbach's opinion. The ALJ erred in rejecting Dr. Leinenbach's opinion about plaintiff's

reaching limitations.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th

Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even

when a treating or examining physician's opinion is contradicted, an ALJ may only reject that

opinion "by providing specific and legitimate reasons that are supported by substantial

evidence." *Id.*

Dr. Leinenbach examined plaintiff in March 2016. AR 436. The ALJ for the most part

adopted Dr. Leinenbach's opinions. AR 22. But the ALJ rejected Dr. Leinenbach's statement

that plaintiff is limited to "occasionally" reaching with her right arm. AR 439. The ALJ found

this statement inconsistent with Dr. Leinenbach's own exam findings and inconsistent "with the

longitudinal treatment record showing conservative treatment for this impairment." AR 22. (The

ALJ had concluded in weighing plaintiff's testimony about her right shoulder that "[t]he record

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 13

as a whole supports some limitations . . . but does not support the debilitating limitations she described." AR 17.) The ALJ limited plaintiff to occasional overhead reaching but found she could frequently reach in other directions. AR 15.

ALJ's finding is not supported by the record. Dr. Leinenbach made the following findings as to plaintiff's right shoulder: "focal tenderness along the anterior aspect"; positive impingement tests; and positive right arc test. AR 438. The ALJ offered no explanation of how these findings are inconsistent with Dr. Leinenbach's opinion that plaintiff is limited to occasional reaching with the right arm, and none is apparent.

And, as discussed above, the record does not support the ALJ's finding that plaintiff received conservative treatment for her right shoulder. Plaintiff reported severe pain April 2016; her provider found decreased strength, tenderness, and "severe pain with minimal ROM [range of motion]." AR 651. Her medical provider ordered an MRI and recommended in the meantime alternating ice and heat, ibuprofen, and gentle ROM exercises. AR 651-52. Her provider made objective findings in June and September 2016, including decreased ROM, tenderness, and effusion. AR 659-60, 669. She reviewed and refilled plaintiff's medications and scheduled plaintiff with a specialist. AR 669. Plaintiff "had to reschedule" a cortisone injection in December 2016, and her provider noted she had "recommended PT but that made her symptoms worse." AR 675. Throughout this period plaintiff was being prescribed opioid medications for her severe pain.

The ALJ did not explain how this constitutes "conservative treatment" inconsistent with an occasional-reaching limitation. *See Revels*, 874 F.3d at 667 (reversing where ALJ did not explain how treatment for fibromyalgia was "conservative"). As explained above, consistent pain

treatment using opioids would not be fairly characterized as "conservative." *See O'Connor v. Berryhill*, 355 F. Supp. 3d 972, 985 (W.D. Wash. 2019).

Even where a treating physician's opinion is brief and conclusory, an ALJ must consider its context in the record—especially the physician's treatment notes. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (holding ALJ erred in finding treating opinion "conclusory" and supported by "little explanation," where ALJ "overlook[ed] nearly a dozen [treatment] reports related to head, neck, and back pain"); *Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017) (finding ALJ erred in rejecting treating physician's opinion as supported by "little explanation," where record included treatment notes supporting the opined limitations). Here, the ALJ's consideration of the record was flawed: as discussed above, the ALJ erred in evaluating the record when making a step three determination, in discounting plaintiff's testimony, and in rejecting Dr. Leinenbach's examining opinion, and that error reflected a serious misreading of the record. Thus, the record does not support the ALJ's conclusion regarding plaintiff's physical RFC. Accordingly, on remand the ALJ must consider the treating opinion of FNP Dahl, as well as Dr. Leinenbach, in the full context of the treatment record, before arriving at an RFC assessment.

D.    Lay Testimony

Plaintiff also assigns error to the ALJ's consideration of plaintiff's husband's testimony. The ALJ found the testimony of plaintiff's husband inconsistent with objective medical evidence, treatment history, and plaintiff's demonstrated level of functioning. The ALJ also found that plaintiff's husband based his testimony on plaintiff's own report rather than making objective statements.

The statements of plaintiff's husband do not support the ALJ's finding that they are based on plaintiff's self-reports; rather, they consist primarily of the husband's observations of what

1    plaintiff is capable of. *See* AR 268-75. And because, as discussed above, the ALJ made

2    numerous errors in evaluating both the medical evidence and plaintiff's testimony, and the ALJ

3    relied on those flawed analyses in evaluating the lay witness testimony, the ALJ should reweigh

4    that testimony on remand.

5    E.      Remand with Instructions for Further Proceedings

6         "'The decision whether to remand a case for additional evidence, or simply to award

7    benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir.

8    2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an

9    error and the record is uncertain and ambiguous, the court should remand to the agency for

10    further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the

11    court concludes that additional proceedings can remedy the ALJ's errors, it should remand the

12    case for further consideration. *Revels*, 874 F.3d at 668.

13         The Ninth Circuit has developed a three-step analysis for determining when to remand

14    for a direct award of benefits. Such remand is generally proper only where

15         "(1) the record has been fully developed and further administrative proceedings
       would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient
16        reasons for rejecting evidence, whether claimant testimony or medical opinion;
       and (3) if the improperly discredited evidence were credited as true, the ALJ
17        would be required to find the claimant disabled on remand."

18    *Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

19         The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is

20    satisfied, the district court still has discretion to remand for further proceedings or for award of

21    benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

22         Here, plaintiff asks that the Court remand for an award of benefits based on the ALJ's

23    errors (1) at step three and (2) in rejecting the opinions of Dr. Leinenbach and FNP Dahl. Dkt.

24    10, p. 19.

25

1         Plaintiff further contends that the Court should remand for benefits because the evidence

2 shows that her spinal condition satisfies each of the requirements under Listing 1.04(A) and she

3 is therefore presumptively disabled at step three. But because the evidence does not definitively

4 establish that plaintiff's spinal impairments meet or medically equal the criteria of Listing

5 1.04(A), remand for further consideration of that issue is warranted.

6         Plaintiff further contends that if Dr. Leinenbach's and FNP Dahl's testimony is credited

7 as true, plaintiff would be unable to perform her past work. However, the vocational expert

8 indicated that, with the "occasional reaching in all directions" limitation Dr. Leinenbach found,

9 plaintiff would be able to work as a price marker, a job with 107,000 positions nationally. AR

10 65-66. Moreover, even if the ALJ erred in rejecting FNP Dahl's opinions, FNP Dahl did not

11 offer an opinion on specific functional limitations and their duration. *See* AR 452-53, 562, 749.

12 The Court cannot conclude that, if credited as true, FNP Dahl's testimony would demonstrate

13 that plaintiff is disabled. *See Trevizo*, 871 F.3d at 682-83.

### V.    CONCLUSION

        Based on the above analysis, the Defendant's decision to deny benefits is REVERSED

and this matter is REMANDED to the Social Security Administration for further proceedings.

        Dated this 14th day of August, 2019.

*Theresa L. Fricke*
_____
Theresa L. Fricke
United States Magistrate Judge

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR FURTHER
PROCEEDINGS - 17